UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYANNE BENSON,<br><br>      Plaintiff,<br><br>     -v.-<br><br>TIFFANY AND COMPANY, SUMMARY PLAN DESCRIPTION, AVAILABLE ONLY TO EMPLOYEES HIRED ON OR BEFORE MARCH 31, 2012, HEALTH CARE PRE-65 RETIREE; TIFFANY & CO., GLOBAL HUMAN RESOURCES, BENEFITS; and TIFFANY AND COMPANY MEDICAL PLAN (AS AMENDED, EFFECTIVE APRIL 1, 1995),<br><br>      Defendants. | 20 Civ. 1289 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

   Plaintiff Maryanne Benson sued to obtain reimbursement of certain dental expenses she had incurred between 2014 and 2017, ultimately naming as Defendants Tiffany & Co., Global Human Resources, Benefits ("Tiffany HR"); the Tiffany and Company Medical Benefit Plan as amended, effective April 1, 1995 (the "1995 Plan"); and Tiffany and Company, Summary Plan Description, Available Only to Employees Hired on or Before March 31, 2012, Health Care Pre-65 Retiree (the "2014 SPD" and collectively with Tiffany HR and the 1995 Plan, "Defendants").[1]  In her suit, Plaintiff alleges violations of §§ 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 1132(g)(1).  Defendants now move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

---

[1]   Defendants' arguments regarding the propriety of naming a summary plan description as a defendant in an ERISA case of this type are discussed *infra*.

arguing that (i) Plaintiff's claims for payment of medical benefits and breach of fiduciary duty brought under §§ 502(a)(1)(B) and 502(a)(3), respectively, lack plausibility; and (ii) dismissal of Plaintiff's claims for attorneys' fees under §§ 502(a)(3) and 1132(g)(1) is compelled by the dismissal of her substantive claims. Should Plaintiff's claims survive their motion to dismiss, Defendants move in the alternative to strike Plaintiff's jury demand. For the reasons discussed herein, Defendants' motion to dismiss is granted and their motion to strike Plaintiff's jury demand is denied as moot.

## BACKGROUND[2]

### A. Factual Background

#### 1. Plaintiff's Employment with Tiffany and Relevant Employee Benefit Plans

Plaintiff was hired by Tiffany & Co. ("Tiffany"), a corporation based in New York, in November 1988. (FAC ¶¶ 2, 11). During Plaintiff's tenure with

---

[2] The facts in this Opinion are drawn in part from Plaintiff's Amended Complaint and the exhibits contained therein (the "Amended Complaint" or "FAC" (Dkt. #28-29)), the well-pleaded facts of which are taken as true for the purposes of this motion. Additional facts come from the exhibits submitted in connection with the declaration of Defendants' counsel, John Houston Pope ("Pope Decl., Ex. []" (Dkt. #56)), which exhibits consist of documents incorporated by reference in the Amended Complaint that are properly considered on a motion to dismiss. *See* Discussion Sec. A.1, *infra*. Those documents include: the Tiffany and Company Medical Benefit Plan (as amended, effective April 1, 1995) (the "1995 Plan" (*id.*, Ex. A)); the Tiffany and Company Medical Plan, Amended and Restated, Effective April 1, 2017 (the "2017 Plan" (*id.*, Ex. B)); the Tiffany and Company, Summary Plan Description, Available Only to Employees Hired on or Before March 31, 2012, Health Care Pre-65 Retiree, as of 2014 (the "2014 SPD" (*id.*, Ex. C)); the Tiffany and Company, Summary Plan Description, Available Only to Employees Hired on or Before March 31, 2012, Health Care Pre-65 Retiree, as of 2017 (the "2017 SPD" (*id.*, Ex. D)); a November 9, 2018 letter from UnitedHealthcare ("UHC") to Plaintiff (the "First-Level Denial" (*id.*, Ex. E)); and a February 12, 2019 letter from UHC to Plaintiff (the "Second-Level Denial" (*id.*, Ex. F)). Plaintiff's May 1, 2018 Claim for Reimbursement is referred to as her "Initial Claim" (FAC, Ex. 2); her October 5, 2018 initial appeal is referred to as the "First-Level Appeal" (*id.*, Ex. 3); and her January 14, 2019 supplemental appeal is referred to as the "Second-Level Appeal" (*id.*, Ex. 5).

For ease of reference, the Court refers to Defendants' brief in support of their motion to dismiss as "Def. Br." (Dkt. #57); Plaintiff's opposition as "Pl. Opp." (Dkt. #58); and Defendants' reply brief as "Def. Reply" (Dkt. #59). The transcript of the March 15, 2021 oral argument is referred to as "March 15, 2021 Tr." (Dkt. #61).

Tiffany, she worked at its flagship store on Fifth Avenue as a sales professional, and received a number of certificates of achievement for this work. (*Id.* at ¶¶ 11-12). Plaintiff retired from her full-time position with Tiffany in January 2009, but continued to work for the company on a part-time basis. (*Id.* at ¶ 11).

Over the course of Plaintiff's employment with Tiffany, the company had in place various employee benefit plans, including the 1995 Plan. (FAC ¶ 4; *see also* 1995 Plan). Tiffany's benefits plans were amended in both substantive and non-substantive ways over time; because of certain dates identified by Plaintiff in her pleadings, Tiffany has submitted both the 1995 Plan and the 2017 Plan in connection with the instant motions. (FAC ¶ 4; *see also* 2017 Plan).[3] Tiffany's employee benefit plans provided eligible employees and their dependents with certain medical, surgical, hospital, and other benefits. (FAC ¶ 4). The plans included various subplans, which provided for the administration of different benefits depending upon, *inter*

---

[3]    The parties disagree as to which employee benefit plan documents govern their rights and obligations for the purposes of this action, and the Court will address this dispute in due course. (*See* Def. Br. 3 n.2; Pl. Opp. 2-4; Def. Reply 2-3). In her Amended Complaint, Plaintiff alleges that Tiffany was unable to locate any applicable plan in effect during the period relevant to this action other than the 1995 Plan. (FAC ¶ 4). While perhaps technically correct, any such difficulty in accessing plans was a temporary consequence of the ongoing COVID-19 pandemic; Defendants have explained that their initial search for relevant documentation was restricted to electronic records, as they were not able to access their physical records at the time. (Pope Decl. ¶ 2(a) n.1). The Court understands that Defendants initially provided Plaintiff with the 2017 Plan, but upon Plaintiff's request for any additional plans in place during the relevant time period, Defendants further provided the 1995 Plan. (March 15, 2021 Tr. 22:22-23:6). Defendants have represented to the Court that while they expect that additional plans were in place during the relevant time period, they remain unable to access them at this time. (*Id.* at 22:8-21, 23:7-22). They have thus appended both the 1995 Plan and the 2017 Plan to the Pope Declaration. (Pope Decl., Ex. A & B).

*alia*, whether the participant is a current employee or a retiree, or over or under the age of 65.  (*See, e.g.*, 2017 Plan, art. 5.1 & apps.).

Both the 1995 Plan and the 2017 Plan contain provisions concerning the submission of claims and the process of appealing from the denial of claims.  (*Compare* 1995 Plan art. IV, *with* 2017 Plan art. VII).  The 1995 Plan obligates claimants to submit a proof of claim "within 90 days after the last date on which covered services were rendered."  (1995 Plan ¶ 4.1).  If the claim is denied in whole or in part, the claimant receives written notice to that effect from the Plan Administrator, and then has 60 days from that denial to move for reconsideration.  (*Id.* at ¶ 4.6).  Under the 2017 Plan, by contrast, a claimant must ensure that the Claim Administrator "receives a properly completed claim form within the period established by the Plan Administrator, Claim Administrator or their respective designees."  (2017 Plan § 7.1(G)).[4]  In addition, the 2017 Plan specifies a longer timeframe for an appeal:  "If the Claimant receives an Adverse Benefit Determination, the Claimant may appeal the Adverse Benefit Determination within 180 days after the Claimant's receipt of the notice of Adverse Benefit Determination. The Claimant must make any appeal in accordance with the procedures established by the Plan Administrator and/or Claim Administrator."  (*Id.* at § 7.5(A)).

The details of the employee benefits plans are summarized in separate summary plan descriptions, or "SPDs."  (*See* FAC ¶ 3).  Here, too, the parties

---

[4]      A different timetable is presented for "medical benefits administered by UnitedHealthcare under UHC Select Plus POS."  (2017 Plan § 7.1(G)).  The Court does not understand that program to be implicated by Plaintiff's lawsuit.

dispute which SPDs are relevant to the instant litigation, and the Court has been presented with two SPDs that track certain dates referred to in Plaintiff's pleadings.[5]  The summary plan description of Tiffany's employee benefits plan in effect in 2014 as to retired employees under the age of 65 was the 2014 SPD.  (*See* Pope Decl. ¶ 2(c); *see also* 2014 SPD).  The 2014 SPD was subsequently superseded, as relevant to these motions, by a summary plan description that was in effect in 2017.  (*See* Pope Decl. ¶ 2(d); *see also* 2017 SPD).

As noted, the 1995 Plan and 2017 Plan set forth claim reimbursement procedures, as well as timelines for any initial appeal of a denied claim for benefits.  (*See* 1995 Plan art. IV; 2017 Plan §§ 7.2 to 7.9).  In line with the timelines provided in the 2017 Plan, the 2014 and 2017 SPDs both indicated that a participant had "180 calendar days after receiving notice of [a denied claim]" to submit their appeal.  (2014 SPD 74; 2017 SPD 39-40).  Each SPD also outlines the various appeal options available to each claimant (2014 SPD 73-81; 2017 SPD 38-41), and each contemplated "first" and "second" levels of appeal (2014 SPD 74; 2017 SPD 40).

According to the 2014 SPD and the 2017 SPD, Tiffany engaged various plan administrators to provide administrative and claim payment services.  (FAC ¶ 5; *see also* 2014 SPD 83-34; 2017 SPD 80).  For example, dental benefits were administered by MetLife, while UnitedHealthcare

---

[5]     Plaintiff appended excerpts from the 2014 SPD to her Complaint.  (*See* Dkt. #29-1).  Defendants, in turn, appended both the 2014 SPD in its entirety, as well as the 2017 SPD, to the Pope Declaration. (*See* Pope Decl., Ex. C & D).  Defendants have represented that they have been unable to identify any additional potentially applicable SPDs given the current limitations on their ability to access hard-copy records.  (March 15, 2021 Tr. 23:7-22).

("UHC") administered medical benefits. (FAC ¶ 5; *see also* 2014 SPD 83-34; 2017 SPD 80). During the course of Plaintiff's employment with Tiffany, she raised a number of issues to Tiffany regarding UHC's resolution of certain of her medical claims. (FAC ¶ 16). In particular, Plaintiff received recurring care on a monthly basis, and submitted claims in connection with that care to UHC each month. (*Id.*). However, on multiple occasions, UHC disclaimed knowledge of its prior resolution of similar claims submitted by Plaintiff and raised the same objections to her claims that they had in prior months. (*Id.*). Resolving these issues required that Plaintiff spend hours on the phone with UHC. (*Id.*).

### 2. Plaintiff's Accident and Claims Submission

On August 16, 2014, Plaintiff suffered serious injuries in a bicycle accident, for which she was admitted to the emergency department of New York Presbyterian Hospital. (FAC ¶ 17). Plaintiff experienced traumatic injuries to her mouth, jaw, and teeth, which injuries required oral surgery. (*Id.*). The costs of the surgery and Plaintiff's hospital stay were covered by Medicare and by her employee benefits plan with Tiffany. (*Id.*). Over the course of the next three years, through April 2017, Plaintiff received additional extensive dental work and physical therapy to treat injuries sustained in the accident. (*Id.* at ¶¶ 18-22). Those treatments again were covered in part by Medicare, as well as by MetLife, Tiffany's dental benefits plan administrator. (*Id.* at ¶¶ 22-23). Plaintiff herself paid a total of $26,716.00 for this dental work. (*Id.* at ¶ 23).

Plaintiff first submitted claims to Medicare for the medical and dental work she received following her accident (FAC ¶ 28); Plaintiff had been

advised — in accordance with the 2017 Plan and the 2017 SPD — that she would be reimbursed "only [for those] … costs beyond what Medicare would have paid, *whether or not [she] file[d] [her] claims with Medicare*" (2017 SPD 37 (emphasis in original); *see also* 2017 Plan § 4.2(B, F)).[6] Medicare denied Plaintiff's claim for certain dental work. (FAC ¶ 28). On May 1, 2018, Plaintiff submitted her dental work claim, totaling $26,716.00, to UHC for reimbursement, pursuant to the procedures set forth in her employee benefits plan with Tiffany. (*Id.* at ¶¶ 28, 31; *see also* Initial Claim).[7] Plaintiff's single aggregated dental work claim was subsequently subdivided into 59 individual claims by UHC, though many of these claims were allegedly duplicative, and Plaintiff found the sheer number of claims difficult to navigate. (*Id.* at ¶¶ 33-35, 37).

UHC denied Plaintiff's claims (FAC ¶ 31; *see also id.*, Ex. 6 (chart summarizing UHC's denials of Plaintiff's claims)), and on October 5, 2018, Plaintiff appealed UHC's denial (*id.* at ¶ 31; *see also* First-Level Appeal). Plaintiff further supplemented her appeal on November 2, 2018. (FAC, Ex. 4). On November 9, 2018, UHC sent Plaintiff a letter denying her

---

[6]  The 1995 Plan and 2014 SPD do not include analogous language, although both documents note that eligible participants' medical benefits would be coordinated with the benefits provided under Medicare. (1995 Plan ¶ 6.3(a); 2014 SPD 50).

[7]  Plaintiff did not specify under which version of Tiffany's employee benefits plan she submitted her claims, referring only to the "Tiffany & Co. Health Care Pre-65 Benefits Plan," and including excerpts from an undated SPD. (*See* Initial Claim 1; *id.*, Ex. A). However, in each of her appeal letters to UHC, Plaintiff recites that "[t]he Claim is made pursuant to the Tiffany & Co. Health Care Pre-65 Benefits Plan (the 'Benefits Plan'), in effect on October 7, 2014, when the treatment was commenced, April 21, 2017 when the treatment was completed, and through March 31, 2018." (FAC, Ex. 3-5). It is for this reason that Defendants include the 2017 Plan and the 2014 and 2017 SPDs, and it is for this reason that the Court considers their provisions in resolving this motion.

appeal. (FAC ¶ 41; *see also* First-Level Denial).[8]  In its letter, UHC stated

that Plaintiff's appeal had been reviewed by a UHC medical director who

specialized in plastic surgery, and that UHC's decision was based on its

policy "for Plan language for dental services." (First-Level Denial 1).  The

letter further explained that UHC was denying Plaintiff's appeal because it

required additional information to determine whether Plaintiff's dental

services were covered under her employee benefits plan.  (*Id.* at 2).

Specifically, UHC identified the following deficiencies in the documentation

provided by Plaintiff:

> We have no information as to which teeth were
> injured, or the nature of the injuries.  We cannot
> determine if the dental procedures you later received
> are related to [the] injury without knowing which
> teeth were injured.  We have no clinical notes or X-
> rays from your initial visit after [the] injury.

(*Id.*).  The letter concluded: "the original determination remains unchanged,

and is upheld."  (*Id.*).

UHC provided Plaintiff with the following instructions for appealing its

determination:  "If you are not satisfied with this decision, you or your

authorized representative may request a second level review.  To request a

review, you must send a letter requesting an appeal and include any

additional information you want considered within 60 days of the date you

receive this letter[.]"  (First-Level Denial 2-3).  The letter further stated that

following the appeal, if UHC "continued[d] to deny the payment, coverage, or

service requested or [Plaintiff] [did] not receive a timely decision, [she] may

---

[8]     Strangely, the letter indicated that Plaintiff's claim — which amounted to
        $26,716.00 — instead totaled "$2,93,876.00."  (First-Level Denial 1; *see also* FAC
        ¶ 38).

be able to request an external review of [her] claim by an independent third party, who will review the denial and issue a final decision." (*Id.* at 3). Lastly, the letter informed Plaintiff that she had the "right to file [a] civil action under section 502 of ERISA after [she had] exhausted all of [her] appeal rights." (*Id.*).

66 days after the issuance of the First-Level Denial, on January 14, 2019, Plaintiff submitted a second supplemental appeal. (Second-Level Appeal). The content of Plaintiff's Second-Level Appeal was similar to her prior appeals, and largely objected to the continued fracturing of her claims by UHC without providing the information sought in the First-Level Denial. (*See id.*). On February 12, 2019, Plaintiff received a letter from UHC denying her Second-Level Appeal on the grounds that it had not been received within the "designated time limitation" set forth in the first letter of denial. (Second-Level Denial 1). The letter concluded that, given Plaintiff's untimeliness, "[UHC's] original benefit determination must stand." (*Id.*).

Plaintiff now seeks to recover monetary damages for her denied dental work claim, in the amount of $26,716.00 "plus interest and pre-judgment interest." (FAC ¶ 44). She also seeks "equitable relief" for Defendants' alleged breaches of their fiduciary duties (*id.* at ¶ 46), as well as attorneys' fees (*id.* at ¶¶ 48, 50).

**B.    Procedural Background**

On February 13, 2020, Plaintiff commenced the instant action with the filing of her Complaint, which named as Defendants Tiffany & Co and Tiffany and Company U.S. Sales, LLC (collectively, the "Initial Defendants"). (Dkt. #1). On March 30, 2020, the Initial Defendants submitted a letter

requesting the Court's leave to move to dismiss the Complaint (Dkt. #20), which letter Plaintiff opposed on April 2, 2020 (Dkt. #21). The Court granted the Initial Defendants' request for such leave, and set a briefing schedule on the proposed motion to dismiss. (Dkt. #22). On April 30, 2020, Plaintiff filed an Amended Complaint. (Dkt. #28-29). Plaintiff's Amended Complaint named as Defendants Tiffany HR, the 1995 Plan, and the 2014 SPD. Counsel for the newly-designated Defendants subsequently appeared in the action (Dkt. #48-49),[9] and the Court held an initial settlement conference with the parties on May 29, 2020 (Minute Entry for May 29, 2020 Conference). Following unsuccessful settlement discussions (*see* Dkt. #51-53), Defendants applied for leave to move to dismiss the Amended Complaint (Dkt. #52). On June 1, 2020, the Court granted Defendants' request and set a briefing schedule. (Dkt. #54). On June 5, 2020, Defendants filed their motion to dismiss and supporting papers. (Dkt. #55-57). Plaintiff filed her opposition on July 10, 2020 (Dkt. #58), and

---

[9] Counsel for Defendants has not accepted service on behalf of the 2014 SPD Defendant, and has represented that no such entity exists. Defendants have explained that "[a] summary plan description is merely a document used to communicate the terms of a plan to the participants and beneficiaries ... and does not have a juridical status that would permit suit." (Def. Br. 1 n.1). Though in her prior submissions to the Court, Plaintiff indicated that the 2014 SPD may be "subsumed" in one of the other named defendants (*see* Dkt. #45 at 1), Plaintiff does not contest Defendants' position, and thus concedes that the 2014 SPD is not an entity capable of suit (*see generally* Pl. Opp.).

Moreover, the Court recognizes that district courts have the inherent power to dismiss a complaint *sua sponte* for failure to serve and for lack of prosecution. *See* Fed. R. Civ. P. 4(m) (requiring service of process with 90 days after the complaint is filed); *DeBlasio* v. *Oliver*, No. 18 Civ. 6842 (KPF), 2020 WL 1673790, at *4 (S.D.N.Y. Apr. 6, 2020) (dismissing case for failure to prosecute) (citing *Taub* v. *Hale*, 355 F.2d 201, 202 (2d Cir.), *cert. denied*, 384 U.S. 1007 (1966); *Zielinski* v. *United States*, 120 F.2d 792 (2d Cir. 1941)). Here, the record does not reflect any attempts by Plaintiff to effect service on this defendant following defense counsel's refusal of service. Rather, Plaintiff has indicated that the defendant "will be dealt with at some future date, if at all" (Dkt. #45 at 1), and has failed to respond to defense counsel's arguments that this defendant cannot be sued. Based on this record, the Court dismisses Plaintiff's claims against the 2014 SPD.

Defendants concluded the briefing by filing their reply on July 24, 2020 (Dkt. #59).

The Court held oral argument on Defendants' motion on March 15, 2021. (*See* March 15, 2021 Tr.). Following oral argument, the parties informed the Court by email that they were in the process of negotiating a potential settlement. The Court proceeded to issue an order staying the action until April 15, 2021, in order to ensure the parties were given the time they needed to discuss a resolution. (Dkt. #63). On April 5, 2021, the Court learned that the parties had reached an impasse in their settlement discussions. Given this development, and the expiration of the stay, the Court must now resolve the instant motion.

## DISCUSSION

**A.    Applicable Law**

**1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Twombly*, 550 U.S. at 555. The Court must accept as true

all well-pleaded factual allegations in the complaint.  *See Iqbal*, 556 U.S. at

678.[10]

In making Rule 12(b)(6) determinations, courts "may consider any

written instrument attached to the complaint, statements or documents

incorporated into the complaint by reference ... and documents possessed

by or known to the plaintiff and upon which [she] relied in bringing the

suit."  *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  "Even

where a document is not incorporated by reference, the court may

nevertheless consider it where the complaint 'relies heavily upon its terms

and effect,' which renders the document 'integral' to the complaint."

*Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting

*Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.

1995) (per curiam)).  Given Plaintiff's pleadings, the Court may properly

consider: (i) the 1995 Plan, which was in place during a portion of Plaintiff's

tenure at Tiffany; (ii) the 2017 Plan, the most recent plan to succeed the

1995 Plan for these purposes and the plan in place at the time of the

submission of her claims; (iii) the 2014 SPD, which was in effect at the time

of Plaintiff's accident; (iv) the 2017 SPD, which was in effect at the time

---

[10]     Following *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft* v.
*Iqbal*, 556 U.S. 662, 678 (2009), the requirements to withstand a motion to dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(6) are well-established in this
Circuit.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan*
v. *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-20 (2d Cir. 2013) (discussing
pleading requirements as applied to an ERISA plan participant, beneficiary, or
fiduciary); *Arista Records LLC* v. *Doe 3*, 604 F.3d 110, 119-21 (2d Cir. 2010)
(rejecting arguments that *Twombly* imposed a heightened pleading standard).  To
the extent they depart from this precedent, the Court rejects Plaintiff's musings
regarding pleading standards.  (*See* Pl. Opp. 5-7).

Plaintiff submitted her dental work claim to UHC; (v) Plaintiff's Initial Claim;

(vi) Plaintiff's First-Level Appeal to UHC; (vii) UHC's First-Level Denial;

(viii) Plaintiff's Second-Level Appeal; and (ix) UHC's Second-Level Denial.

*See Guo* v. *IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 522 (S.D.N.Y. 2015)

(collecting cases holding that courts may consider plan-related

documentation on a motion to dismiss).

### 2. The Exhaustion Requirement for Claims Under ERISA § 502(a)(1)(B)

ERISA § 502 provides an avenue through which a pension plan

participant or beneficiary may enforce her rights as provided by that plan's

terms. *See* 29 U.S.C. § 1132. As relevant to the instant matter,

§ 502(a)(1)(B) permits a plan participant to bring a civil action "to recover

benefits due to [her] under the terms of [her] plan, to enforce [her] rights

under the terms of the plan, or to clarify [her] rights to future benefits under

the terms of the plan." *Id.* § 1132(a)(1)(B). Before a plaintiff brings such

action, however, she must exhaust the administrative remedies contained

within the plan from which her claim arises. *See Eastman Kodak Co.* v.

*STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) ("ERISA requires both that

employee benefit plans have reasonable claims procedures in place, and that

plan participants avail themselves of these procedures before turning to

litigation.").

Under Second Circuit law, "a failure to exhaust ERISA administrative

remedies is not jurisdictional, but is an affirmative defense." *Paese* v.

*Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006).

Nevertheless, "courts routinely dismiss ERISA claims brought under Section

502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe* v. *N.Y. Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (collecting cases). Requiring claimants to exhaust their remedies under the relevant plan prior to resort to federal court provides a "safeguard that encourages employers and others to undertake the voluntary step of providing medical and retirement benefits to plan participants." *Halo* v. *Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 55 (2d Cir. 2016) (internal alterations and quotation marks omitted) (quoting *LaRue* v. *DeWolff, Boberg & Assocs.*, 552 U.S. 248, 259 (2008) (Roberts, C.J., concurring)).

A claimant may be excused from exhaustion where pursuing a claim through administrative means would be futile. *See Kennedy* v. *Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). "The threshold required by the futility exception is very high[.]" *Barnett* v. *Int'l Bus. Machs. Corp.*, 885 F. Supp. 581, 589 (S.D.N.Y. 1995). A court will "excuse an ERISA plaintiff's failure to exhaust only '[w]here claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile.'" *Davenport* v. *Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (emphasis in *Davenport*) (quoting *Kennedy*, 989 F.2d at 594).

**B.   Discussion**

Defendants have moved to dismiss Plaintiff's claims for payment of medical benefits and breach of fiduciary duty brought under ERISA §§ 502(a)(1)(B) and 502(a)(3), respectively, on the ground that the alleged claims lack plausibility because of, *inter alia*, (i) Plaintiff's failure to plead that she has exhausted her administrative remedies; (ii) Plaintiff's failure to

14

seek an equitable remedy in connection with her breach of fiduciary duty claim; and (iii) Plaintiff's failure to allege that any Defendant violated a fiduciary duty owed her. (Def. Br. 6-11). Defendants also argue that dismissal of Plaintiff's claims for attorneys' fees brought under § 502(a)(3) and § 1132(g)(1) must necessarily follow dismissal of her substantive claims. (*Id.* at 11-12). Lastly, Defendants argue that should any of Plaintiff's claims survive the instant motion to dismiss, her demand for a jury trial must be struck. (*Id.* at 12-13). For the reasons that follow, Plaintiff's Amended Complaint is dismissed in full.[11]

---

[11] In Plaintiff's opposition brief, she requests that the Court strike certain arguments that in her view, were not adequately previewed in the Initial Defendants' March 30, 2020 pre-motion letter seeking leave to file a motion to dismiss the initial Complaint. (Pl. Opp. 7 (citing Dkt. #20)). Plaintiff argues that the Initial Defendants' letter did not "hint" at bases for dismissal aside from "boilerplate plausibility claims" and that Defendants were thus not granted leave to litigate issues related to exhaustion of administrative remedies. (*Id.*). The current Defendants (who are represented by the same counsel as the Initial Defendants) retort that these arguments were previewed in the pre-motion letter, including the untimeliness of Plaintiff's appeal, and moreover, that Plaintiff has not demonstrated any prejudice to her from this alleged breach of the Court's procedure. (Def. Reply 7).

The Court observes that the Initial Defendants' pre-motion letter sought leave to dismiss Plaintiff's initial Complaint, and that Plaintiff subsequently filed an Amended Complaint, which named new defendants, among other changes. When Defendants applied for leave to move to dismiss the Amended Complaint on June 1, 2020, they indicated that their motion would not "depart" from the Initial Defendants' bases, "other than as required by the changes that Plaintiff made in the Amended Complaint." (Dkt. #52 at 2 n.1). As examples, Defendants' letter noted that Plaintiff had (i) named a "nonexistent entity" as a defendant (the 2014 SPD); and (ii) asserted an inadequate breach of fiduciary duty claim against both Tiffany HR and the 1995 Plan. (*Id.*).

Accordingly, while the Court agrees that most of the grounds for Defendants' motion to dismiss were previewed in their predecessor defendants' March 30, 2020 pre-motion letter, the fact that Defendants' arguments evolved in response to the Amended Complaint was to be expected, was previewed in their June 1, 2020 letter, and as such, does not provide a basis for striking any portion of their motion. Moreover, following the parties' unsuccessful settlement discussions, the Court itself ordered the parties to proceed to briefing Defendants' motion to dismiss, rather than requiring the parties to first submit further pre-motion letter briefing. (Dkt. #54). Accordingly, Defendants have complied with this Court's Individual Rules of Practice, and their motion will be considered in its entirety.

### 1. Plaintiff Fails to Plead Exhaustion of Her Claim Under ERISA § 502(a)(1)(B)

Defendants argue that Plaintiff has failed to plead that she has exhausted her administrative remedies as required to bring a claim under ERISA § 502(a)(1)(B). (Def. Br. 7-10). Specifically, they assert that Plaintiff failed to file either her First-Level Appeal or Second-Level Appeal of UHC's denial of her dental work claim within the time periods required under the 2017 Plan. (*Id.* at 8). Plaintiff does not dispute the timing of her appeals, but argues that the timing requirements cited in Defendants' brief are not required under the 1995 Plan or 2014 SPD. (Pl. Opp. 2, 5). She further disagrees with Defendants' assertions that the 1995 Plan and 2014 SPD were superseded by the 2017 Plan and 2017 SPD, and that the latter set of documents imposes any further requirements or deadlines on her. (*Id.* at 2-3, 5).[12]

### a. The 2017 Plan Governs Defendants' Obligations to Plaintiff

At the outset, the Court addresses the parties' dispute as to which of Tiffany's employee benefit plans governs Defendants' obligations to Plaintiff, as well as the appeal procedures Plaintiff was required to follow. (*See* Def. Br. 3 n.2; Pl. Opp. 2-4; Def Reply 1-3). Defendants argue that Plaintiff was required to follow the appeal procedures set forth in the plan documents in place at the time she submitted her claim to UHC: the 2017 Plan and 2017 SPD. (Def. Reply 2-3). Plaintiff argues that her benefits were provided for

---

[12] Plaintiff raises additional arguments that the Court thinks better considered in the context of applicable exceptions to the exhaustion requirement, including, *inter alia*, that Defendants' "rope-a-dope tactics" did not make the Second-Level Appeal "an inviting option." (Pl. Opp. 5).

under the 1995 Plan, and that the 2017 Plan, by its own terms, could neither "split" nor "reduce" these benefits. (Pl. Opp. 2-3).[13]  The Court's view is that Defendants have the better of the argument.

While "[e]mployers … are generally free under ERISA … to adopt, modify, or terminate welfare plans," *Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U.S. 73, 78 (1995), this Circuit has held that an employer cannot "defeat or diminish [an] employee's fully vested rights" through the "subsequent unilateral adoption of an amendment," *Gibbs ex rel. Estate of Gibbs* v. *CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006) (alteration omitted) (quoting *Feifer* v. *Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1211 (2d Cir. 2002)).  In *Gibbs*, the Second Circuit held that an attempt to alter the terms of an SPD by providing the Plan Administrator with "sole discretion" to determine eligibility for benefits was ineffective where plaintiff's right to benefits had vested prior to the SPD's amendment.  *Id.* at 576-77.  In reaching this determination, the Court rejected the argument that the alteration to the SPD was merely procedural, and thus did not affect the substance of plaintiff's benefits.  *Id.* at 577-78.  The Second Circuit reasoned that the alteration — which, by granting the Plan Administrator sole discretion to determine benefits, effectively altered the district court's standard of review — "substantively diminished" plaintiff's benefits.  *Id.*

---

[13]     At oral argument, Plaintiff's counsel represented that neither the 1995 Plan nor the 2017 Plan was provided to Plaintiff during her employment with Tiffany, and that she was only aware of the requirements and procedures set forth in the 2014 SPD. (March 15, 2021 Tr. 8:14-23).  Plaintiff's familiarity with the SPD is consistent with the ERISA statutory scheme, which "contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd* v. *Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990).

The differences between the 1995 and the 2017 Plans that are discussed in this Opinion do not implicate Plaintiff's entitlement *vel non* to benefits, but merely modify the appeal processes established by the Plan Administrator. In assessing the potentially operative plan documents, the Court's focus is on amendments related to the second-level appeal process, given that Plaintiff's Second-Level Appeal — but not her First-Level Appeal — was denied on the basis of untimeliness. (*See* First-Level Denial 1-2; Second-Level Denial 1). The Court considers the relevant amendments to the 2017 Plan to be procedural in nature, as they did not have the effect of substantively diminishing Plaintiff's benefits. The 2014 SPD — which Plaintiff's counsel represented at oral argument was relied upon by Plaintiff throughout the appeals process (*see* March 15, 2021 Tr. 8:14-23) — both recognized the possibility of a second appeal (2014 SPD 74), and asked participants to "note that [UHC] handles all appeals" (*id.*). There is little substantive difference between this language and that in the 2017 Plan — which permitted appeals subject to the requirement that they be made "in accordance with the procedures established by the Plan Administrator and/or Claim Administrator." (2017 Plan § 7.5(A)). Thus, the Court believes that the 2017 Plan governs the instant dispute.[14]

---

[14] While Plaintiff continues to set great store by the 1995 Plan, as evidenced by her designation of the 1995 Plan as a defendant, the Court finds this reliance misplaced. Plaintiff views the 1995 Plan as supportive of her position on the instant motion, due to its lack of specificity as to appeal procedures; however, under the very terms of the 1995 Plan, Plaintiff's Initial Claim — filed one year after the completion of her dental work — appears to have been untimely. (*See* 1995 Plan ¶ 4.1 (requiring claimants to submit a proof of claim "within 90 days after the last date on which covered services were rendered")).

As it happens, however, the operative plan documents are not outcome-determinative of the instant motion. As noted above, the 2014 SPD recognized the possibility of a second appeal, and informed Plaintiff that UHC would handle "all" of her appeals. (2014 SPD 74). UHC, in its role as a plan administrator, informed Plaintiff in the First-Level Denial that she had 60 days from the receipt of the denial to file her Second-Level Appeal. (First-Level Denial 2-3). Here, Plaintiff does not dispute that failing to comply with appeal deadlines constitutes a failure to plead exhaustion. (*See* Pl. Opp. 2-5). Rather, she takes issue with the notice provided as to the appeal timeline, as well as the feasibility of appealing under the circumstances. (*Id.*). As such, the Court's analysis will similarly focus on the validity and enforceability of the deadline for the Second-Level Appeal, given the manner of notice provided Plaintiff.[15]

---

[15] The ERISA regulations adopted by the Department of Labor ("DOL") allow employers to impose a time limit of at least 60 days on the right to appeal. *See* 29 C.F.R. § 2560.503-1(h)(2)(i). Where a claimant fails to appeal a denial of benefits under an employee benefit plan within the prescribed time limit, the court will generally not reach the merits of her claim. *Burke* v. *Kodak Ret. Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003).

Other Circuits have held that a plan participant who does not comply with appeal deadlines has failed to exhaust administrative remedies, though the Court understands that the Second Circuit has not yet addressed the issue. *See McCulloch* v. *Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*, No. 17 Civ. 3927 (PGG), 2018 WL 10602192, at *9 (S.D.N.Y. Sept. 29, 2018) (citing *Gayle* v. *United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005); *Gallegos* v. *Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000); *Terry* v. *Bayer Corp.*, 145 F.3d 28, 40 (1st Cir. 1998)). Given that Plaintiff has not disputed that failing to comply with appeal deadlines constitutes a failure to plead exhaustion (*see* Pl. Opp. 2-5), the Court will assume for the purposes of resolving the instant motion that, absent any applicable exceptions, a failure to comply with the administrative appeal timeline constitutes a failure to exhaust administrative remedies. *See McCulloch*, 2018 WL 10602192, at *10; *see also Tiger* v. *AT & T Techs. Plan for Emps. Pensions, Disability Benefits*, 633 F. Supp. 532, 534 (E.D.N.Y. 1986) ("[A]bsent equitable considerations, a claimant's failure to pursue administrative remedies within the time frame mandated by [their employment benefits plan] shall preclude judicial review of his underlying claim for benefits.").

### b. Plaintiff Received Adequate Notice of the Second-Level Appeal Requirement

As an initial matter, the Court finds that the 60-day deadline for Plaintiff's Second-Level Appeal was both reasonable and enforceable, and that the First-Level Denial provided adequate notice of the deadline. The Court observes that this deadline comports with the ERISA regulations adopted by the Department of Labor. *See* 29 C.F.R. § 2560.503-1(h)(2)(i). Further, district courts in this Circuit have found that appeal periods of this length are both reasonable and enforceable. *See, e.g.*, *Tiger* v. *AT & T Techs. Plan for Emps. Pensions, Disability Benefits*, 633 F. Supp. 532, 534 (E.D.N.Y. 1986) (finding that the 60-day limit on appeals imposed by the defendant employment benefit plan was "reasonable", and noting that several ERISA plans had adopted such limits); *see also Sanfilippo* v. *Provident Life & Cas. Ins. Co.*, 178 F. Supp. 2d 450, 458-59 (S.D.N.Y. 2002) (finding failure to exhaust administrative remedies where plaintiff did not appeal by 60-day deadline). And courts have indicated that such time limits are enforceable even where they are not mentioned in the plan documents. *Accord Kenavan* v. *Empire Blue Cross & Blue Shield*, No. 91 Civ. 2393 (KMW), 1996 WL 14446, at *3 (S.D.N.Y. Jan. 16, 1996) (finding notice of appeals process in benefits letter sufficient), *aff'd sub nom. Schmookler* v. *Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997) (summary order).[16] In particular, the

---

[16]    The Court observes that in *Chapman* v. *ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir. 2002), the Second Circuit remanded an action to the district court to determine whether an appeal time limit set forth in a denial letter but unmentioned in either a policy or SPD was enforceable. *Id.* at 514-15. In so doing, the Second Circuit referenced the regulatory directive that a claims procedure would "be deemed to be reasonable only if it ... [was] described in the summary plan description." *Id.* at 514 (alteration in *Chapman*) (citing 29 C.F.R. § 2560.503-1(b)).

Second Circuit has indicated that non-plan documents with an explanation of the appeal process are sufficient to meet the ERISA requirements of "adequate notice" of claim adjudication and a "reasonable opportunity" for full and fair review.  *Schmookler*, 107 F.3d 4 (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(f)(4)).  Moreover, courts have focused on the content of denial letters in determining whether plaintiffs were given adequate notice of the requirements for exhausting their administrative remedies.  *See Serrapica* v. *Long-Term Disability Plan of the Chase Manhattan Bank*, No. 05 Civ. 2450 (NG) (RER), 2007 WL 2262878, at *3 (E.D.N.Y. Aug. 3, 2007) (collecting cases holding that a denial letter must include adequate notice of appeal rights); *see also Burke* v. *Kodak Ret. Income Plan*, 336 F.3d 103, 107-08 (2d Cir. 2003) (rejecting argument that denial letter need not inform plaintiff of her appeal rights).

---

While *Chapman* leaves open the possibility that notice provided in a denial letter is sufficient, the Court does not have the benefit of either the appellate or district court's decision on this issue.  *See Chapman* v. *ChoiceCare Long Island Term Disability Plan*, No. 98 Civ. 4475 (DRH) (ARL), 2007 WL 1467146, at *1 (E.D.N.Y. May 16, 2007) (noting that on remand, defendant withdrew its claim that plaintiff failed to timely file her request for administrative review).  The Court thus looks to other decisions in this Circuit that have either found notice adequate where it was not provided by plan documents, or emphasized the importance of notice provided in denial letters.  *See Schmookler* v. *Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997) (summary order) (rejecting argument that notice of appeals process must appear in insurance contract); *Serrapica* v. *Long-Term Disability Plan of the Chase Manhattan Bank*, No. 05 Civ. 2450 (NG) (RER), 2007 WL 2262878, at *3 (E.D.N.Y. Aug. 3, 2007) (collecting cases holding that "the denial letter itself" must include a notice of appeal rights).  And although Plaintiff has not argued that either the 2014 SPD or 2017 SPD strayed from any regulatory requirements, the Court observes nonetheless that "not every deviation by a plan from the requirements of the regulation justifies proceeding directly to court."  *Eastman Kodak Co.* v. *STWB Inc.*, 452 F.3d 215, 223 n.10 (2d Cir. 2006) (citing U.S. Dep't of Labor, Employee Benefits Security Administration, Benefits Claims Procedure Regulation FAQs, F-2, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation (last visited May 5, 2021)).

The Court thus considers the sufficiency of the notice provided regarding the Second-Level Appeal Requirement. As noted above, the 2014 SPD — which document Plaintiff acknowledges receiving — contemplated both "first" and "second" levels of appeal. (2014 SPD 74). And UHC's First-Level Denial made clear that a second-level appeal was required. (First-Level Denial 2-3).

The Second Circuit has observed that "[a] written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect her claim, including the time limits applicable to administrative review." *Burke*, 363 F.3d at 107 (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1). Here, the First-Level Denial stated: "If you are not satisfied with this decision, you or your authorized representative may request a second level review. To request a review, you *must* send a letter requesting an appeal and include any additional information you want considered within 60 days of the date you receive this letter[.]" (First-Level Denial 2-3 (emphasis added)). Courts have found that similarly mandatory and unambiguous language provides adequate notice of the appeals process and timeline. For example, in *Burke*, the Second Circuit characterized as "unambiguous mandatory language" a denial of claim letter stating "[s]hould you desire a review, you *must* send a written request ..." as well as a letter that "clearly set[] forth the procedures and time limit for obtaining a review[.]" 336 F.3d at 108 (first quoting *Carpenter* v. *Frontier Corp.,* No. 99 Civ. 6329T, slip op. at 6 (W.D.N.Y. Mar. 30, 2001), and then quoting *Gruber* v. *Unum Life Ins. Co. of Am.,* 195 F. Supp. 2d 711, 717 (D. Md. 2002)). Conversely, the Court found language stating merely that "you should ...

22

write a letter" to be "grossly uninformative." *Id.* Here, the notice provided falls in the former category. It too was unambiguous and mandatory, as it provided that Plaintiff "*must* send a letter" to request an appeal. (First-Level Denial 2-3 (emphasis added)).[17] Further, the letter clearly set forth the procedure for pursuing a subsequent appeal, as well as the time period for doing so. (*See id.*). *See Kenavan*, 1996 WL 14446, at *3 (finding that sufficient notice was provided by language stating: "If you do not agree with the amount provided you may ask for a review. To do this you must write to us before [date.]"). And the letter indicated that Plaintiff would not receive a "final decision" until she submitted her additional appeal, received either a denial or untimely decision, and then commenced an external review by an independent third party. (First-Level Denial 3; *see also* 2014 SPD 76-80 (describing the external review procedures)). It also informed Plaintiff that she would have the right to bring a civil action only "after [she had] exhausted all of [her] appeal rights." (First-Level Denial 3). The First-Level Denial accordingly provided adequate notice of the appeal procedure and deadline, as well as the ramifications of failing to appeal.

The Court concludes that Plaintiff fails to allege exhaustion of her administrative remedies for her claim under § 502(a)(1)(B). Accordingly, the Court will turn to whether any applicable exceptions excuse this failure.

---

[17]     While the letter indicated that Plaintiff "*may* request a second level review," this Court has previously determined that the word "may" does not render exhaustion optional. (First-Level Denial 2-3). *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 8711557, at *3-4 (S.D.N.Y. Aug. 5, 2016) (discussing *Kennedy* v. *Empire Blue Cross & Blue Shield*, 989 F.2d 588, 593 (2d Cir. 1993)).

## 2.   Plaintiff Fails to Establish the Applicability of Any Exceptions to the Exhaustion Requirement

Courts have excused a plaintiff's untimely pursuit of administrative remedies where the plaintiff demonstrates either that: (i) "any effort to exhaust would be futile," *Davenport*, 249 F.3d at 133, or (ii) equitable tolling is warranted, *Veltri* v. *Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004).  Plaintiff has alluded to these arguments in her opposition briefing, arguing that Defendants' conduct "did not make an optional additional appeal an inviting option" — in particular, given that Plaintiff was "buried in Defendants' paper."  (Pl. Opp. 5).[18]

Beginning with futility, as stated above, a court will "excuse an ERISA plaintiff's failure to exhaust only '[w]here claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile.'"  *Davenport*, 249 F.3d at 133 (emphasis in *Davenport*) (quoting *Kennedy*, 989 F.2d at 594).  In such circumstances, courts find that "the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement."  *Barnett*, 885 F. Supp. at 588 (quoting *Kennedy*, 989 F.2d at 594 (internal quotation marks omitted)).  However, where a plaintiff failed to timely pursue "available and open" administrative remedies, courts have found that "the

---

[18]   The Court disagrees with Plaintiff's characterization of the Second-Level Appeal as "optional."  As discussed above, the unambiguous language of the First-Level Denial provided that to request further review of her claim, Plaintiff "*must* send a letter requesting an appeal ... within 60 days."  (First-Level Denial 2-3 (emphasis added)).  This language is necessarily mandatory.  *See Kenavan* v. *Empire Blue Cross & Blue Shield*, No. 91 Civ. 2393, 1996 WL 14446, at *3 (S.D.N.Y. Jan. 16, 1996) (finding that plaintiffs were required to appeal their claims where document stated "[t]o [ask for a review] ... you *must* write to us ...."), *aff'd sub nom. Schmookler*, 107 F.3d 4; *cf. Burke*, 336 F.3d at 108 (finding that use of "should" in denial letter did not provide adequate notice of appeal timeline).

plaintiff cannot later claim futility based on her inability to pursue those remedies any longer." *Id.* at 588 n.7 (citing *Tiger,* 633 F. Supp. at 534).

While the Court sympathizes with Plaintiff's frustration with what appears to have been an idiosyncratic — if not inconsiderate — approach to processing her claim, it finds that Plaintiff has established no basis to claim futility. Plaintiff characterizes the second-level appeal as not "inviting" (Pl. Opp. 5), but this argument is belied by the fact that Plaintiff did in fact pursue the appeal, just not within the required timeline (*see* Second-Level Denial).[19] Moreover, courts generally find futility where there has been an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile." *Davenport*, 249 F.3d at 133 (alteration in *Davenport*) (quoting *Barnett*, 885 F. Supp. at 588 (internal quotation marks omitted)). The First-Level Denial plainly did not establish that any further pursuit of Plaintiff's claims upon a second-level appeal would be futile. Rather, it identified specific inadequacies in Plaintiff's appeal that were capable of being remedied, and explicitly invited Plaintiff to submit supplementary information to address these deficiencies with her subsequent appeal. (First-Level Denial 2 (observing that UHC had no information "as to which teeth were injured, or the nature of the injuries," and was also missing "clinical notes or X-rays" from Plaintiff's initial post-injury doctor's visit)). *See Saladin* v. *Prudential Ins. Co. of Am.,*

---

[19]    The Court further questions the sincerity of this objection to the appeal process, given that at oral argument, Plaintiff's counsel characterized the Second-Level Appeal as one that "frankly … wasn't that cumbersome to do[.]" (March 15, 2021 Tr. 21:17).

337 F. App'x 78, 79 (2d Cir. 2009) (summary order) (rejecting plaintiff's futility arguments where defendant "adequately notified [her] of the basis for its denial and informed her how to perfect her appeal"); *cf. Juliano* v. *Health Maint. Org. of New Jersey, Inc.,* 221 F.3d 279, 287 (2d Cir. 2000) (observing that the purpose of ERISA's "full and fair review requirement" is to "provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts" (citation and internal quotation marks omitted)).

Plaintiff takes issue with the purported deficiencies identified by UHC in her First-Level Appeal, arguing that neither the 1995 Plan nor the 2014 SPD required the submission of such documentation. (Pl. Opp. 5). Plaintiff also argues that UHC — rather than Plaintiff — should have collected these materials from Plaintiff's provider. (*Id.* at 4; *see also* March 15, 2021 Tr. 19:4-20:7). However, neither argument establishes that Plaintiff's pursuit of her Second-Level Appeal would have been futile. *First,* as to the absence of documentation requirements from the 1995 Plan and 2014 SPD, the Court observes that both the 2014 SPD and 2017 SPD indicate that a written notice of denial may provide: "a description of any additional material or information necessary to complete the claim and an explanation of why the material or or information is necessary[.]" (2014 SPD 73; 2017 SPD 39). Further, the 2017 Plan provided notice that the participant must make their appeal "in accordance with the procedures established by the Plan Administrator and/or Claim Administrator." (2017 Plan § 7.5(A); *see also* 2014 SPD 74 ("Please note that [UHC] handles all appeals.")). Plaintiff was thus on notice that UHC might impose further documentation

requirements over the course of her appeal, and that if UHC did so, it was her responsibility to provide the requested information and/or materials. *Second*, even if the plan documents had failed to provide Plaintiff with adequate notice of the proper procedure for pursuing her appeal, that would not, by itself, establish futility. *Cf. Davenport*, 249 F.3d at 134 (finding that plaintiff was required to exhaust even if she lacked access to the claim procedures). But *third*, given that (i) UHC established an appeals process pursuant to which Plaintiff was required to provide additional materials in connection with her second-level appeal, and (ii) Plaintiff had notice of this process, it is not enough for her to argue that UHC had access to the same information that she was required to provide. In other words, because Plaintiff was tasked with providing requested information under the terms of the SPD, she cannot establish futility by arguing merely that UHC could acquire the necessary information equally or more easily. Importantly, Plaintiff has not demonstrated that providing the requested documents and information would have been futile.

Plaintiff next argues that the UHC specialist who reviewed Plaintiff's First-Level Appeal was a plastic surgeon rather than a dentistry specialist. (Pl. Opp. 4 n.4). But this argument also fails to establish that a timely subsequent appeal would have been futile. The Second Circuit, when considering allegations that "[defendant's] employees overlooked or unreasonably failed to gather material evidence," determined that "administrative rejection of [plaintiff's] challenge was not a foregone conclusion," where plaintiff forwent "the opportunity to identify those errors and seek administrative correction." *Saladin*, 337 F. App'x at 80. Here too,

Plaintiff had the opportunity to seek "administrative correction" of any errors in the First-Level Denial. *Id.*[20] The Court is thus unable to excuse Plaintiff's failure to plead exhaustion on this basis, particularly in light of the "very high" threshold required for the application of the futility exception in this Circuit. *See Barnett*, 885 F. Supp. at 589.

Plaintiff also has not established that the Court should apply the doctrine of equitable tolling to the deadline for her Second-Level Appeal to preserve the timeliness of her filing. To warrant equitable tolling, a plaintiff must demonstrate "'[i] that [she] has been pursuing [her] rights diligently, and [ii] that some extraordinary circumstance stood in [her] way' and prevented timely filing." *Lawrence* v. *Florida,* 549 U.S. 327, 336 (2007) (quoting *Pace* v. *DiGuglielmo,* 544 U.S. 408, 418 (2005)).[21]

The Second Circuit has explained that equitable tolling is only appropriate in "rare and exceptional circumstances," such as "where a plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion[.]" *Zerilli-Edelglass* v. *N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (internal citations and alterations omitted). Plaintiff has not alleged that she was

---

[20]    Although Plaintiff has argued that UHC had access to the additional information and documentation requested in its First-Level Denial — either because it was submitted by Plaintiff or available through her provider — Plaintiff had the opportunity to identify these errors in her Second-Level Appeal. (*See* Pl. Opp. 4; March 15, 2021 Tr. 19:4-21:3). This argument thus similarly fails to establish futility.

[21]    The Second Circuit has previously refrained from deciding whether equitable tolling "applies to time limits that are specified in [ERISA] plan provisions." *Chapman*, 288 F.3d at 512, *see also Garcia Ramos* v. *1199 Health Care Emps. Pension Fund*, 413 F.3d 234, 237-38 (2d Cir. 2005). However, the Court need not address the issue in this decision, as Plaintiff has not met her burden of establishing that equitable tolling is warranted.

unable to pursue her rights during the period between her receipt of the First-Level Denial and the deadline for her Second-Level Appeal due to any medical condition, mental impairment, or similar obstacle. (*See generally* FAC). Plaintiff's only explanation is that the appeal was not an "inviting option," given Defendants' "rope-a-dope tactics," and that she was "buried in Defendants' paper[.]" (Pl. Opp. 5). But mere administrative inconvenience, without more, is insufficient to demonstrate that "'some extraordinary circumstance stood in [Plaintiff's] way' and prevented timely filing," *Lawrence,* 549 U.S. at 336 (quoting *Pace,* 544 U.S. at 418), especially given that Plaintiff has not demonstrated that she was unaware of the deadline for her appeal, *see Dillman* v. *Combustion Eng'g, Inc.,* 784 F.2d 57, 60 (2d Cir. 1986) (declining to find that plaintiff was entitled to equitable tolling where he "did not present any evidence that he was unaware of his cause of action … because of appellee's misleading conduct"); *cf. Kantor-Hopkins* v. *Cyberzone Health Club,* No. 06 Civ. 643 (DLI) (LB), 2007 WL 2687665, at *6 (E.D.N.Y. Sept. 10, 2007) ("[C]ourts do not employ the doctrine of equitable tolling to remedy mere inconvenience involved in meeting a filing deadline.").

In fact, Plaintiff's allegations establish that she was engaged in "'pursuing her rights diligently,'" *Lawrence,* 549 U.S. at 336 (quoting *Pace,* 544 U.S. at 418), as demonstrated by the fact that she filed several appeals, including her untimely Second-Level Appeal, *cf. Viti* v. *Guardian Life Ins. Co. of America,* 817 F. Supp. 2d 214, 230 (S.D.N.Y. 2011) (finding that "the very fact" that plaintiff applied for Social Security benefits demonstrated that he was capable of pursuing his legal rights, including his ERISA claim). Despite Plaintiff's engagement with the administrative process, she has not

provided any legitimate basis for deeming this a "rare and exceptional circumstance[]" that would warrant equitable tolling of her appeal deadline. *Zerilli-Edelglass,* 333 F.3d at 80; *see also Guo*, 95 F. Supp. 3d at 524-28 (holding that plaintiff was not entitled to equitable tolling where she "diligently pursued both internal review and judicial review," but failed to allege "extraordinary circumstances" that prevented her from timely filing her claims (internal citation omitted)).

The Court recognizes that there may have been missteps in UHC's handling of Plaintiff's claim and appeals. However, to establish a basis for the Court's application of either exception to the ERISA exhaustion requirement, Plaintiff must do more than merely identify inefficiencies and submit that they were preventable. She has not. For this reason, neither futility nor equitable tolling applies to excuse Plaintiff's failure to plead exhaustion of her administrative remedies. Consequently, the Court dismisses Plaintiff's claim under § 502(a)(1)(B).

### 3. Plaintiff Fails to State a Claim for Breach of Fiduciary Duty

Plaintiff additionally alleges a claim for breach of fiduciary duty under § 502(a)(3), which permits civil actions by an ERISA plan participant "(a) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). "Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under § 502(a)(1)(B)." *Wilkins* v. *Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578 (2d Cir. 2006) (citing *Varity Corp.*

v. *Howe*, 516 U.S. 489, 512 (1996)).  Importantly, § 502(a) provides only equitable relief.  *See Great-West Life & Annuity Ins. Co.* v. *Knudson,* 534 U.S. 204, 209-10 (2002)*; see also Wilkins*, 445 F.3d at 578 ("[F]iduciary duty violations entitle claimants only to equitable relief under ERISA § 502(a)(3)[.]").  As such, money damages are generally unavailable under § 502(a)(3).  *See Lee* v. *Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993); *Hall* v. *Kodak Ret. Income Plan*, 363 F. App'x 103, 107 (2d Cir. 2010) (summary order).  Accordingly, "courts in this Circuit have repeatedly rejected attempts to repackage claims for wrongful denial of benefits under Section 502(a)(1) as claims for breaches of fiduciary duties under Section 502(a)(3)." *Xiaohong Xie* v. *JPMorgan Chase Short-Term Disability Plan*, No. 15 Civ. 4546 (LGS) (KHP), 2017 WL 2462675, at *4 (S.D.N.Y. June 7, 2017) (internal quotation marks omitted) (collecting cases).

Defendants argue that Plaintiff's breach of fiduciary duty claim brought under § 502(a)(3) should be dismissed as duplicative of her § 502(a)(1)(B) claim.  (Def. Br. 9).  They also argue more broadly that breach of fiduciary duty claims cannot properly be brought against an employee benefit plan, providing an additional ground for dismissal as to the 1995 Plan.  (*Id.* at 10).  Defendants further contend that Tiffany HR is insulated from direct liability for any of UHC's alleged inadequacies, and cannot be held liable on an alternative theory of "failure to monitor" UHC.  (*Id.* at 10-11).  Plaintiff responds that it is inappropriate to dismiss her § 502(a)(3) claim at this stage of the proceedings, as discovery into such claim would not be substantial.  (Pl. Opp. 8).  Further, she disagrees both that the 1995

Plan is not properly subject to such a claim (*id.*), and that Tiffany HR is insulated from direct liability (*id.* at 8-9).

In her Amended Complaint, Plaintiff alleges that Tiffany HR breached its fiduciary duty by (i) "denying the express terms of the [2014] SPD and 1995 Plan without any basis … by maintaining that [the documents did] not cover her injury" (FAC ¶ 29; *see also id.* at ¶ 32); (ii) "double counting" a credit in Plaintiff's claim that was in fact paid by MetLife and claiming unwarranted discounts (*id.* at ¶¶ 30, 40); (iii) fracturing Plaintiff's claim into 59 duplicative and unorganized claims, which turned Plaintiff's $26,716.00 claim into a $293,879.00 claim (*id.* at ¶¶ 33-38); (iv) failing to keep organized records of Plaintiff's claim (*id.* at ¶ 39); (v) failing to have Plaintiff's appeal evaluated by qualified personnel (*id.* at ¶ 41); and (vi) hiring, retaining, and failing to correct UHC, despite certain "red flags" (*id.* at ¶ 42). Plaintiff further alleges that UHC, "on [Tiffany HR's] behalf," breached various fiduciary duties in its administration of the 2014 SPD and 1995 Plan, and particularly in its dealings with Plaintiff's claim and appeal. (*Id.*).[22]

Though Plaintiff professes to seek "equitable relief" under her breach of fiduciary duty § 502(a)(3) claim, the specific relief sought does not appear to be equitable in nature. (*See* FAC ¶ 46). After all, the "equitable relief" Plaintiff seeks is monetary damages in an amount equivalent to her denied claim, plus interest and prejudgment interest. (*Id.*). Thus, Plaintiff's claim is entirely duplicative of her claim under § 502(a)(1)(b), with the primary

---

[22]    While Plaintiff's arguments are geared to the 1995 Plan and the 2014 SPD, their logic would apply equally to the 2017 analogues of each.

difference being that her § 502(a)(3) claim additionally incants that she is seeking "equitable relief." (*Compare id.* at ¶ 44, *with id.* at ¶ 46). "Whether Plaintiff seeks to clothe this issue in the garb of 'recovery of benefits' or 'breach of fiduciary duty' does not change the fact that the relief sought … is the same." *Del Greco* v. *CVS Corp.*, 337 F. Supp. 2d 475, 488 (S.D.N.Y. 2004), *adhered to on reconsideration*, 354 F. Supp. 2d 381 (S.D.N.Y. 2005), *aff'd*, 164 F. App'x 75 (2d Cir. 2006) (summary order), and *aff'd*, 164 F. App'x 75 (2d Cir. 2006) (summary order).

While a plaintiff's claim for relief under § 502(a)(1)(B) does not necessarily preclude a claim under § 502(a)(3), the law is clear that a § 502(a)(3) claim cannot exist solely as a second route to the damages sought under § 502(a)(1)(B). *See Wegmann* v. *Young Adult Inst., Inc.*, No. 15 Civ. 3815 (KPF), 2016 WL 827780, at *5 (S.D.N.Y. Mar. 2, 2016); *see also, e.g., Lee*, 991 F.2d at 1011 (observing that "a review of the legislative history confirms that Congress did not contemplate that [the] phrase [equitable relief] would include an award of money damages"); *Winfield* v. *Citibank, N.A.*, 842 F. Supp. 2d 560, 566 (S.D.N.Y. 2012) ("The relief available under [§ 502(a)(3)] is limited to equitable relief: monetary damages are generally unavailable."); *Harrison* v. *Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 433-34 (S.D.N.Y. 2006) (dismissing a claim under § 502(a)(3) where "the gravamen of [Plaintiff's] claim is a claim for monetary compensation for Defendants' alleged failure to comply with the provisions of the Plan"). Because Plaintiff's claim is plainly one for compensatory damages, as noted above, such a claim — even if it results from breaches of fiduciary duty — is not recoverable as equitable relief under § 502(a)(1)(B). *See Del Greco*, 337 F.

Supp. 2d at 488 (collecting cases); *see also N.Y. State Psychiatric Ass'n, Inc.* v. *UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) ("*NYS Psych Association*") ("If … the relief [Plaintiff] seeks is merely monetary compensation resembling legal damages … the relief sought would be unavailable as an equitable remedy under § 502(a)(3).").

Plaintiff's reference to the Supreme Court's decision in *CIGNA Corp.* v. *Amara*, 563 U.S. 421 (2011), does not compel a different result. Under Plaintiff's reading of *Amara*, it is not "appropriate" to dismiss a § 502(a)(3) claim on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Pl. Opp. 8). In *Amara*, the Supreme Court considered a district court's ability to order certain equitable remedies under § 502(a)(3). 563 U.S. at 438-40. The Supreme Court observed there that the district court's "affirmative and negative injunctions obviously [fell] within [the] category" of what is "traditionally considered equitable remedies." *Id.* at 440. Thus, *Amara* is inapposite because Plaintiff's Amended Complaint asks for no such equitable remedy — it pleads only money damages.

Plaintiff also cites to *NYS Psych Association*, 798 F.3d at 134, in support of the argument that her § 502(a)(3) claim should survive a motion to dismiss. (Pl. Opp. 8). In *NYS Psych Association*, the Second Circuit held that at "the motion-to-dismiss stage of the litigation," it was not yet clear whether Plaintiff's § 502(a)(1)(B) claim for monetary benefits would provide him with a sufficient remedy. *Id.* However, the Second Circuit did not indicate that § 502(a)(3) claims necessarily survive a motion to dismiss. Rather, the Court observed that breach of fiduciary claims that led to "any … injunction coupled with 'surcharge' — 'monetary compensation' for a

loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment" were necessarily claims for equitable relief. *Id.* (alterations in *NYS Psych Association*) (citing *Amara*, 563 U.S. at 440-41). The Second Circuit contrasted such breach of fiduciary claims with those at issue in *Nechis* v. *Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005), where the Court affirmed a dismissal of § 502(a)(3) claims, finding that "any harm to [the plaintiff could] be compensated by money damages and plaintiff "[could not] satisfy the conditions required for injunctive relief." *NYS Psych Association*, 798 F.3d at 135 (alterations in *NYS Psych Association*) (quoting *Nechis*, 421 F.3d at 103). Plaintiff's claims here are more akin to those in *Nechis* than *NYS Psych Association.* Here, unlike in *Amara* or *NYS Psych Association*, Plaintiff has put forth no basis for injunctive or equitable relief. Rather, "the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Frommert* v. *Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) (citing *Gerosa* v. *Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003)); *accord Nechis*, 421 F.3d at 103.

Plaintiff's alleged harms can be compensated by money damages and Plaintiff has not sought any equitable relief that would distinguish her § 502(a)(3) claim from her § 502(a)(1)(B) claim. For these reasons, the Court dismisses Plaintiff's breach of fiduciary claims brought under § 502(a)(3).[23]

---

[23]    Because Plaintiff's breach of fiduciary duty claim is dismissed as duplicative of her § 502(a)(1)(B) claim, the Court need not address the parties' disputes as to whether a breach of fiduciary duty claim can be properly asserted against an employee benefit plan defendant (*see* Def. Br. 10; Pl. Opp. 8), or the extent to which Tiffany HR is insulated from liability for UHC's alleged inadequacies (Def. Br. 10-11; Pl. Opp. 8-9). However, as to Plaintiff's breach of fiduciary duty claim against the 1995 Plan, the Court observes that the Second Circuit has indicated that, in the context

### 4.    The Court Dismisses Plaintiff's Claims for Attorneys' Fees

Lastly, Defendants move to dismiss Plaintiff's claims for attorneys' fees brought under § 502(a)(3) and 29 U.S.C. § 1132(g)(1).  Defendants argue that attorneys' fees are not appropriately sought under § 502(a)(3), and that with respect to 29 U.S.C. § 1132(g)(1), dismissal of Plaintiff's substantive claims compels dismissal of her attorneys' fees claim.  (Def. Br. 11-12).  Plaintiff does not dispute that dismissal of her attorneys' fees claims must necessarily follow dismissal of her other claims (Pl. Opp. 9 (acknowledging that "losers do not get legal fees")), but characterizes her application for attorneys' fees under § 502(a)(3) as seeking "equitable restitution" (*id.*).  Inasmuch as the Court has dismissed Plaintiff's claims for payment of medical benefits and breach of fiduciary duty, leaving only Plaintiff's claims for attorneys' fees, it agrees with Defendants that Plaintiff no longer has a basis for an attorneys' fees award.  *See Hardt* v. *Reliance Standard Life Ins. Co.*, 560 US. 242, 255 (2010) (holding that a fees claimant must show "some degree of success on the merits" before a court may award attorneys' fees under § 1132(g)(1)) (quoting *Ruckelshaus* v. *Sierra Club*, 463 U.S. 680, 694 (1983)).  The Court therefore dismisses Plaintiff's claims for attorneys' fees.[24]

---

of ERISA, it "find[s] it difficult to imagine a situation in which a fund could fulfill [the role of participant, beneficiary or fiduciary]."  *Pressroom Unions-Printers League Income Sec. Fund* v. *Cont'l Assurance Co.*, 700 F.2d 889, 893 n.8 (2d Cir. 1983).  And a sister court in this District has since relied upon this language from *Pressroom Unions* in rejecting arguments that an employee benefit plan plaintiff has standing to bring ERISA claims as a "participant, beneficiary[,] or fiduciary."  *See E. States Health & Welfare Fund* v. *Philip Morris, Inc.*, 11 F. Supp. 2d 384, 400-01 (S.D.N.Y. 1998) (noting that "the definition of 'fiduciary' in ERISA would seem to exclude the possibility of a plan acting as a fiduciary" (citing 29 U.S.C. § 1002(21)(A))).

[24]    Defendants also move to strike Plaintiff's demand for a jury trial (Def. Br. 12-13), an application that Plaintiff opposes (Pl. Opp. 9-10).  As Plaintiff's Amended Complaint has been dismissed in full, the Court need not reach this issue, and instead denies that component of Defendants' motion as moot.

### 5. Plaintiff May Not Replead

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)). Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). That being said, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).

Plaintiff has not sought leave to amend, and the Court submits that any amendment would be futile. Plaintiff has previously amended her complaint with the benefit of a pre-motion letter from the Initial Defendants, but her Amended Complaint fails to state a claim on which relief can be granted. *Cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration, footnote, and internal quotation marks omitted)); *Binn* v. *Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) ("To grant Plaintiffs leave to amend would be allowing them a 'third

bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020). Moreover, given the denial of her untimely Second-Level Appeal, Plaintiff cannot amend her Complaint so as to plead exhaustion of her § 502(a)(1)(B) claim, and has not voiced any theory of equitable relief that would support a § 502(a)(3) claim. For these reasons, the Court will dismiss the Amended Complaint with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED, and Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      May 10, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge